UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                                                               Case No. 8:19-bk-09605-MGW
                                                                                              Chapter 7

Alvaro Ramos
and Laurie Ann Ramos,

        Debtor(s).
_____/

## TRUSTEE'S APPLICATION TO EMPLOY REAL ESTATE AGENT AND BROKER

        Christine L. Herendeen, Chapter 7 Trustee in the above-captioned case, seeks the authority of this court to employ a real estate agent and broker under 11 U.S.C. § 327(a) and states as follows:

        1.       The Trustee seeks to employ a real estate agent, Naji Hassan (the "**Real Estate Agent**"), and a broker, 7 Star Realty, Inc. (the "**Broker**"), to assist in the liquidation and sale of the surrendered real property in the instant case. The Trustee has selected this Real Estate Agent because he has the ability and experience to render the necessary assistance, and is familiar with the real estate market in the area where the real property is located.

        2.       In the event of a sale, the Trustee would seek approval to pay a commission of up to 8% of the gross sale price for any property with a gross sale price of $50,000 or greater and a flat fee of $3,000 for any property with a gross sale price that is less than $50,000, payment of which will be made at closing. A copy of the Listing Agreement is attached hereto as Exhibit "A." The real estate agent and broker will not be paid without an application to and an order from this Court, subject to approval of the court pursuant to Section 330 of the Bankruptcy Code.

        3.       The Trustee believes it is necessary to employ a real estate agent and a broker for these services to obtain the highest and best price, and neither the real estate agent, nor the broker, represent an interest adverse to the Trustee of this estate on the matters upon which they will be engaged.

        4.       To the best of the Trustee's knowledge, the real estate agent and broker have no connection with the debtor, creditors, any other party in interest, their respective attorneys and accountants, or the United States Trustee, except as is disclosed in the declaration attached to and made part of this Application. Therefore, the realtor and broker are disinterested within the meaning of 11 U.S.C. § 101(14).

        **WHEREFORE**, the Trustee requests this Court authorize the employment of Naji Hassan and 7 Star Realty, Inc. in the capacity set forth above.

                                                                                      Respectfully submitted,

                                                                                     /s/ Christine L. Herendeen
                                                                                     Christine L. Herendeen, Trustee
                                                                                      P.O. Box 152348
                                                                                      Tampa, FL 33684
                                                                                      (813) 438-3833

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

Alvaro Ramos
and Laurie Ann Ramos,
                Debtor(s).
_____/

Case No. 8:19-bk-09605-MGW
Chapter 7

## DECLARATION IN SUPPORT OF EMPLOYMENT

1. I, Naji Hassan am a licensed real estate agent with 7 Star Realty, Inc. engaged to assist the trustee in carrying out the trustee's duties under the Bankruptcy Code.

2. I do not hold or represent an interest adverse to the estate.

3. I am not a creditor, equity security holder, or insider of the Debtor.

4. I am not, and was not within the two years before the petition date, a director, officer, or employee of the Debtor.

5. I have no interest materially adverse to the interest of the estate or of any class of creditors or equity holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtor, or for any other reason.

6. I further state that neither I, nor 7 Star Realty Inc. have any connection or otherwise have no interest adverse to the Debtors, creditors, or any other party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the Office of the United States Trustee.

7. I have not and will not agree to share my compensation for such services with any person, with the exception of a qualified cooperating real estate broker, if one shall exist.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

Executed on: _12/2/19_

By: _____
Naji Hassan
951 Atlantic Blvd., Suite 130
Jacksonville, FL 32225

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the Application to Employ Real Estate Broker was provided by electronic delivery or U.S. mail on December 16, 2019 to:

U. S. Trustee, 501 E. Polk Street Suite 1200, Tampa, FL 33602

Shawn M Yesner, Yesner Law, P.L., 2753 State Road 580 Suite 202, Clearwater, FL 33761

Alvaro Ramos and Laurie Ramos, 1620 Curlew Road, Dunedin, FL  34698

Naji Hassan, 7 Star Realty, Inc., 951 Atlantic Blvd., Suite 130, Jacksonville, FL 32225

/s/ Christine L. Herendeen
Christine L. Herendeen, Trustee

# Exclusive Right of Sale Listing Agreement



1  This Exclusive Right of Sale Listing Agreement ("Agreement") is between CHRISTINE HERENDEEN,
2* ___AS TRUSTEE OF THE BANKRUPTCY ESTATE OF ALVARO RAMOS AND LAURIE RAMOS___ ("Seller")
3* and ___7 STAR REALTY INC___ ("Broker").

4  **1. Authority to Sell Property:** Seller gives Broker the EXCLUSIVE RIGHT TO SELL the real and personal property
5  (collectively "Property") described below, at the price and terms described below, beginning
6* ___NOVEMBER 21, 2019___ and terminating at 11:59 p.m. on ___NOVEMBER 20, 2020___ ("Termination Date"). Upon
7  full execution of a contract for sale and purchase of the Property, all rights and obligations of this Agreement will
8  automatically extend through the date of the actual closing of the sales contract. Seller and Broker acknowledge
9  that this Agreement does not guarantee a sale. This Property will be offered to any person without regard to race,
10  color, religion, sex, handicap, familial status, national origin, or any other factor protected by federal, state, or local
11  law. Seller certifies and represents that she/he/it is legally entitled to convey the Property and all improvements.

12  **2. Description of Property:**
13*  (a) Street Address: ___19050 SW 284TH ST. HOMESTEAD, FL 33030___

15*  Legal Description: ___2 57 38 4.44 AC N1/2 OF E1/2 OF W1/2 OF SW1/4 OF NE 1/4 LESS N & E25FT___
16*  ___FOR R/W OR 17546-0663 0297 5___  ☐ See Attachment

17*  (b) Personal Property, including appliances: ___NONE___
18*  ☐ See Attachment

19  (c) Occupancy:
20*  Property ☐ is ☐ is not currently occupied by a tenant. If occupied, the lease term expires _____.

21  **3. Price and Terms:** The property is offered for sale on the following terms or on other terms acceptable to Seller:
22*  (a) Price: $ ___375,000.00___
23*  (b) Financing Terms: ☒ Cash ☐ Conventional ☐ VA ☐ FHA ☐ Other (specify) _____
24*  ☐ Seller Financing: Seller will hold a purchase money mortgage in the amount of $_____
25*  with the following terms: _____
26*  ☐ Assumption of Existing Mortgage: Buyer may assume existing mortgage for $_____ plus
27*  an assumption fee of $_____. The mortgage is for a term of _____ years beginning in
28*  _____, at an interest rate of _____% ☐ fixed ☐ variable (describe) _____.
29*  Lender approval of assumption ☐ is required ☐ is not required ☐ unknown. **Notices to Seller:** (1) You may
30  remain liable for an assumed mortgage for a number of years after the Property is sold. Check with your
31  lender to determine the extent of your liability. Seller will ensure that all mortgage payments and required
32  escrow deposits are current at the time of closing and will convey the escrow deposit to the buyer at closing.
33  (2) Extensive regulations affect Seller-financed transactions. It is beyond the scope of a real estate licensee's
34  authority to determine whether the terms of your Seller financing agreement comply with all applicable laws or
35  whether you must be registered and/or licensed as a loan originator before offering Seller financing. You are
36  advised to consult with a legal or mortgage professional to make this determination.
37*  (c) Seller Expenses: Seller will pay mortgage discount or other closing costs not to exceed _____% of the
38  purchase price and any other expenses Seller agrees to pay in connection with a transaction.

39  **4. Broker Obligations:** Broker agrees to make diligent and continued efforts to sell the Property until a sales
40  contract is pending on the Property.

41  **5. Multiple Listing Service:** Placing the Property in a multiple listing service (the "MLS") is beneficial to Seller
42  because the Property will be exposed to a large number of potential buyers. As a MLS participant, Broker is
43  obligated to timely deliver this listing to the MLS. This listing will be promptly published in the MLS unless Seller
44  directs Broker otherwise in writing. Seller authorizes Broker to report to the MLS this listing information and price,
45  terms, and financing information on any resulting sale for use by authorized Board / Association members and
46  MLS participants and subscribers unless Seller directs Broker otherwise in writing.

Seller (____) (____) and Broker/Sales Associate (____) (____) acknowledge receipt of a copy of this page, which is Page 1 of 4.
ERS-16tb Rev 3/14
© 2014 Florida Association of Realtors®
Serial#: 029159-800141-4435138

formsimplicity

47   6. **Broker Authority: Seller** authorizes **Broker** to:
48      (a) Advertise the Property as **Broker** deems advisable including advertising the Property on the Internet unless
49          limited in (6)(a)(i) or (6)(a)(ii) below.
50          **(Seller opt-out) (Check one if applicable)**
51*         (i) ☐ Display the Property on the Internet except the street address.
52*         (ii) ☐ **Seller** does not authorize **Broker** to display the Property on the Internet.
53          **Seller** understands and acknowledges that if **Seller** selects option (ii), consumers who search for listings
54          on the Internet will not see information about the Property in response to their search.
55*         _____/_____ **Initials of Seller**
56      (b) Place appropriate transaction signs on the Property, including "For Sale" signs and "Sold" signs (once **Seller**
57          signs a sales contract) and use **Seller's** name in connection with marketing or advertising the Property.
58      (c) Obtain information relating to the present mortgage(s) on the Property.
59      (d) Provide objective comparative market analysis information to potential buyers.
60*     (e) **(Check if applicable)** ☒ Use a lock box system to show and access the Property. A lock box does not
61          ensure the Property's security. **Seller** is advised to secure or remove valuables. **Seller** agrees that the lock
62          box is for **Seller's** benefit and releases **Broker**, persons working through **Broker**, and **Broker's** local Realtor
63          Board / Association from all liability and responsibility in connection with any damage or loss that occurs.
64*         ☒ Withhold verbal offers.  ☒ Withhold all offers once **Seller** accepts a sales contract for the Property.
65      (f) Act as a transaction broker.
66      (g) **Virtual Office Websites:** Some real estate brokerages offer real estate brokerage services online. These
67          websites are referred to as Virtual Office Websites ("VOWs"). An automated estimate of market value or
68          reviews and comments about a property may be displayed in conjunction with a property on some VOWs.
69          Anyone who registers on a VOW may gain access to such automated valuations or comments and reviews
70          about any property displayed on a VOW. Unless limited below, a VOW may display automated valuations or
71          comments and reviews about this Property.
72*         ☒ **Seller** does not authorize an automated estimate of the market value of the listing (or a hyperlink to such
73          estimate) to be displayed in immediate conjunction with the listing of this Property.
74*         ☒ **Seller** does not authorize third parties to write comments or reviews about the listing of the Property (or
75          display a hyperlink to such comments or reviews) in immediate conjunction with the listing of this Property.
76   7. **Seller Obligations:** In consideration of **Broker's** obligations, **Seller** agrees to:
77      (a) Cooperate with **Broker** in carrying out the purpose of this Agreement, including referring immediately to
78          **Broker** all inquiries regarding the Property's transfer, whether by purchase or any other means of transfer.
79      (b) Provide **Broker** with keys to the Property and make the Property available for **Broker** to show during
80          reasonable times.
81      (c) Inform **Broker** before leasing, mortgaging, or otherwise encumbering the Property.
82      (d) Indemnify **Broker** and hold **Broker** harmless from losses, damages, costs, and expenses of any nature,
83          including attorney's fees, and from liability to any person, that **Broker** incurs because of (1) **Seller's**
84          negligence, representations, misrepresentations, actions, or inactions; (2) the use of a lock box; (3) the
85          existence of undisclosed material facts about the Property; or (4) a court or arbitration decision that a broker
86          who was not compensated in connection with a transaction is entitled to compensation from **Broker**. This
87          clause will survive **Broker's** performance and the transfer of title.
88      (e) Perform any act reasonably necessary to comply with FIRPTA (Section 1445 of the Internal Revenue Code).
89      (f) Make all legally required disclosures, including all facts that materially affect the Property's value and are not
90          readily observable or known by the buyer. **Seller** certifies and represents that **Seller** knows of no such
91          material facts (local government building code violations, unobservable defects, etc.) other than the following:
92* _____
93      **Seller** will immediately inform **Broker** of any material facts that arise after signing this Agreement.
94      (g) Consult appropriate professionals for related legal, tax, property condition, environmental, foreign reporting
95          requirements, and other specialized advice.
                    LIEN HOLDER
96   8. **Compensation:** ~~Seller~~ will compensate **Broker** as specified below for procuring a buyer who is ready, willing,
97      and able to purchase the Property or any interest in the Property on the terms of this Agreement or on any other
98      terms acceptable to **Seller**. ~~Seller~~ LIEN HOLDER will pay **Broker** as follows (plus applicable sales tax):
99*     (a) ___6___ % of the total purchase price plus $_____ OR $_____, no
100         later than the date of closing specified in the sales contract. However, closing is not a prerequisite for **Broker's**
101         fee being earned.
102*    (b) _____ ($ or %) of the consideration paid for an option, at the time an option is created. If the option is
103         exercised, **Seller** will pay **Broker** the Paragraph 8(a) fee, less the amount **Broker** received under this
104         subparagraph.

Seller (____)(____) and Broker/Sales Associate (____)(____) acknowledge receipt of a copy of this page, which is Page 2 of 4.
ERS-16th Rev 3/14
© 2014 Florida Association of Realtors®
Serial#: 029159-800141-4435138

formsimplicity

105   (c) _____ ($ or %) of gross lease value as a leasing fee, on the date **Seller** enters into a lease or
106   agreement to lease, whichever is earlier. This fee is not due if the Property is or becomes the subject of a
107   contract granting an exclusive right to lease the Property.
108   (d) **Broker's** fee is due in the following circumstances: (1) If any interest in the Property is transferred, whether by
109   sale, lease, exchange, governmental action, bankruptcy, or any other means of transfer, regardless of whether
110   the buyer is secured by **Seller**, **Broker**, or any other person. (2) If **Seller** refuses or fails to sign an offer at the
111   price and terms stated in this Agreement, defaults on an executed sales contract, or agrees with a buyer to
112   cancel an executed sales contract. (3) If, within _____ days after Termination Date ("Protection Period"),
113   **Seller** transfers or contracts to transfer the Property or any interest in the Property to any prospects with whom
114   **Seller**, **Broker**, or any real estate licensee communicated regarding the Property before Termination Date.
115   However, no fee will be due **Broker** if the Property is relisted after Termination Date and sold through another
116   broker.
117   (e) **Retained Deposits:** As consideration for **Broker's** services, **Broker** is entitled to receive _____% of all
118   deposits that **Seller** retains as liquidated damages for a buyer's default in a transaction, not to exceed the
119   Paragraph 8(a) fee.

120  9. **Cooperation with and Compensation to Other Brokers: Notice to Seller:** The buyer's broker, even if
121   compensated by **Seller** or **Broker**, may represent the interests of the buyer. **Broker's** office policy is to cooperate
122   with all other brokers except when not in **Seller's** best interest and to offer compensation in the amount of
123   ☐ _1.5_ % of the purchase price or $_____ to a single agent for the buyer; ☐ _1.5_ % of the
124   purchase price or $_____ to a transaction broker for the buyer; and ☐ _1.5_ % of the purchase
125   price or $_____ to a broker who has no brokerage relationship with the buyer.
126   ☐ None of the above. (If this is checked, the Property cannot be placed in the MLS.)

127  10. **Brokerage Relationship:** **Broker** will act as a transaction broker. **Broker** will deal honestly and fairly; will account
128   for all funds; will use skill, care, and diligence in the transaction; will disclose all known facts that materially affect
129   the value of the residential property which are not readily observable to the buyer; will present all offers and
130   counteroffers in a timely manner unless directed otherwise in writing; and will have limited confidentiality with
131   **Seller** unless waived in writing.

132  11. **Conditional Termination:** At **Seller's** request, **Broker** may agree to conditionally terminate this Agreement. If
133   **Broker** agrees to conditional termination, **Seller** must sign a withdrawal agreement, reimburse **Broker** for all direct
134   expenses incurred in marketing the Property, and pay a cancellation fee of $_____ plus
135   applicable sales tax. **Broker** may void the conditional termination, and **Seller** will pay the fee stated in Paragraph
136   8(a) less the cancellation fee if **Seller** transfers or contracts to transfer the Property or any interest in the Property
137   during the time period from the date of conditional termination to Termination Date and Protection Period, if
138   applicable.

139  12. **Dispute Resolution:** This Agreement will be construed under Florida law. All controversies, claims, and other
140   matters in question between the parties arising out of or relating to this Agreement or the breach thereof will be
141   settled by first attempting mediation under the rules of the American Mediation Association or other mediator
142   agreed upon by the parties. If litigation arises out of this Agreement, the prevailing party will be entitled to recover
143   reasonable attorney's fees and costs, unless the parties agree that disputes will be settled by arbitration as follows:
144   **Arbitration:** By initialing in the space provided, **Seller** (____) (____), Sales Associate (____), and **Broker** (____)
145   agree that disputes not resolved by mediation will be settled by neutral binding arbitration in the county in which
146   the Property is located in accordance with the rules of the American Arbitration Association or other arbitrator
147   agreed upon by the parties. Each party to any arbitration (or litigation to enforce the arbitration provision of this
148   Agreement or an arbitration award) will pay its own fees, costs, and expenses, including attorney's fees, and will
149   equally split the arbitrator's fees and administrative fees of arbitration.

150  13. **Miscellaneous:** This Agreement is binding on **Seller's** and **Broker's** heirs, personal representatives,
151   administrators, successors, and assigns. **Broker** may assign this Agreement to another listing office. This
152   Agreement is the entire agreement between **Seller** and **Broker**. No prior or present agreements or representations
153   will be binding on **Seller** or **Broker** unless included in this Agreement. Electronic signatures are acceptable and
154   will be binding. Signatures, initials, and modifications communicated by facsimile will be considered as originals.
155   The term "buyer" as used in this Agreement includes buyers, tenants, exchangors, optionees, and other categories
156   of potential or actual transferees.

Seller (____) (____) and Broker/Sales Associate (____) (____) acknowledge receipt of a copy of this page, which is Page 3 of 4.
ERS-16tb Rev 3/14
© 2014 Florida Association of Realtors®

Serial#: 029159-800141-4435138

formsimplicity

157* **14. Additional Terms:** _____
158   - The lien holder shall pay the Realtors Commissions.
159   - Seller is selling the property "AS-IS". Seller will not supply a sellers disclosure, as the
160     seller has never lived at the property.
161   - See the Short Sale / Pre-Foreclosure
162   - Seller may cancel this Agreement before the ending date of the listing period without advance notice to the
163     Broker, and without payment of a commission or any other consideration if the property is conveyed to the
164     mortgage insurer or the mortgage holder. The sale completion is subject to approval by the mortgagee
165   - Per sellers discretion, may be uploaded to MLS at a later date than the executed date of this listing
166     agreement.
167   _____
168   _____
169   _____

170* **Seller's Signature:** _____[signature]_____ as Trustee and only as   Date: 11/24/19
171*   Trustee in Bankr. Est. of Alberto & Laurie Ramos, Case No. 8:19-09605-MGW
      Home Telephone: _____ Work Telephone: _____ Facsimile: _____
172* Address: _____
173* Email Address: _____

174* **Seller's Signature:** _____ Date: _____
175* Home Telephone: _____ Work Telephone: _____ Facsimile: _____
176* Address: _____
177* Email Address: _____

178* **Authorized Sales Associate or Broker:** _____[signature]_____ Date: 11.21.19
179* Brokerage Firm Name: 7 STAR REALTY, INC.   Telephone: 904-425-8280
180* Address: P.O. BOX 350822 JACKSONVILLE, FL 32235

181* | Copy returned to **Seller** on _____ by ☐ email ☐ facsimile ☐ mail ☐ personal delivery. |

The Florida Association of REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

Seller (__)(__) and Broker/Sales Associate (__)(__) acknowledge receipt of a copy of this page, which is Page 4 of 4.
ERS-16tb  Rev 3/14
© 2014 Florida Association of Realtors®
Serial#: 029159-800141-4435138

formsimplicity

Case 8:19-bk-09605-MGW   Doc 21   Filed 12/16/19   Page 8 of 10

 

**SHORT SALE/PRE-FORECLOSURE ADDENDUM TO EXCLUSIVE RIGHT OF SALE LISTING AGREEMENT**
Copyrighted by and Suggested For Use by the Subscribers of the
Northeast Florida Multiple Listing Service, Inc. ("NEFMLS")

The following terms are hereby incorporated into and made a part of the Listing Agreement between __7 STAR REALTY INC__ ("BROKER")
and __CHRISTINE HERENDEEN, AS TRUSTEE OF THE BANKRUPTCY ESTATE OF ALVARO RAMOS AND LAURIE RAMOS__ ("SELLER") for
Property located at __19050 SW 284TH ST. HOMESTEAD, FL 33030__ .

To the extent any of the terms of this Addendum conflict with any provision of the Listing Agreement, the terms of this Addendum shall control.

1. A **SHORT SALE** typically occurs when the ~~SELLER's~~ **BORROWER** sales proceeds after payment of customary closing costs from the sale of real property **are insufficient** to pay the outstanding encumbrances (mortgages and other liens) in full at closing, and **SELLER does not have funds available** to pay the deficiency. Generally, a **SHORT SALE** SELLER is in default of the encumbrances and is able to document the financial inability to meet ongoing repayment obligations. Lender, other encumbrance holders, and/or court approval may be required.

2. A PRE-FORECLOSURE typically occurs when the ~~SELLER~~ **BORROWER is NOT current** on the payment of the encumbrances on the Property and the encumbrance holder has provided notice of possible foreclosure proceedings or has already begun foreclosure proceedings. Lender, other encumbrance holders, and/or court approval may be required.

3. Any purchase and sale agreement entered into by SELLER for the sale of the Property shall include a contingency for (a) approval of the Purchase Price, Closing Disclosure or a closing statement, and all other terms of the purchase and sale agreement by SELLER's lenders, other encumbrance holders, and/or court, and (b) the encumbrance holders' written agreement to accept a payoff which is less than the balance due and furnish a release and satisfaction of encumbrances upon receipt of the discounted payoff amounts.

4. SELLER acknowledges there are no promises or representations regarding whether encumbrance holders will agree to a short sale or on what terms they may agree to a short sale.

**NOTICE: IN A SHORT SALE TRANSACTION,** ~~SELLER MAY HAVE A CONTINUING FINANCIAL OBLIGATION TO SELLER'S ENCUMBRANCE HOLDERS AFTER CLOSING INCLUDING, BUT NOT LIMITED TO, EXECUTION OF A PROMISSORY NOTE IN FAVOR OF THE ENCUMBRANCE HOLDER(S) OR LIABILITY FOR A DEFICIENCY JUDGMENT.~~ **SELLER IS ADVISED TO SEEK COMPETENT LEGAL AND FINANCIAL ADVICE CONCERNING SELLER'S LEGAL, TAX AND FINANCIAL OBLIGATIONS. THE FACT THAT THIS SHORT SALE MAY BE CONSIDERED OR APPROVED BY ENCUMBRANCE HOLDERS DOES NOT AUTOMATICALLY MEAN THAT ANY FORECLOSURE PROCESS HAS BEEN SUSPENDED OR DELAYED.**

5. SELLER authorizes BROKER and, as appropriate, closing attorney/settlement agent to:

(a) Privately market and disclose the Property as a **SHORT SALE** and/or PRE-FORECLOSURE Property to NEFMLS brokers in accordance with NEFMLS rules and regulations, and/or to other non-NEFMLS Brokers;

(b) Include the contingencies set forth in Paragraph 3 above in any purchase and sale agreement entered into by SELLER;

(c) Contact encumbrance holder's loss mitigation, collections, or other appropriate departments and/or the foreclosure attorney to obtain loan and/or lien status, account, estoppel, payoff, and related information, and to otherwise communicate directly with them to facilitate their approval of the **SHORT SALE** and/or PRE-FORECLOSURE transaction, and provide them with the estimated and final Closing Disclosure or a closing statement. SELLER shall execute all other written authorizations to release information required by the encumbrance holders to perform this function;

(d) Provide comparables, BROKER's price opinions (generally consisting of information regarding comparable properties in the same community, general condition of the community, and condition of the Property relative to other properties in the community), NEFMLS and other information to document the current market value of the Property;

Page 1 of 3   Copyright Northeast Florida Multiple Listing Service, Inc.   SSPFA-NEFMLS-5 REVISED 12/16/15

(e) Furnish any and all encumbrance account and payoff information to prospective purchasers, their cooperating brokers, and the closing attorney/settlement agent;

(f) Reduce the compensation offered to a cooperating broker if SELLER'S encumbrance holder(s) requires a reduction of the total compensation to be paid to BROKER;

(g) Coordinate visual inspection of the Property by authorized representatives of encumbrance holders and court, if applicable;

(h) _CA_ / _____ (initial if applicable) SELLER hereby authorizes Broker to disclose the current SHORT SALE and/or PRE-FORECLOSURE status of the Property publicly as permitted in the NEFMLS system and in other public marketing media, and SELLER acknowledges that this disclosure may be provided to the general public and any electronic display;

(i) _CA_ / _____ (initial if applicable) SELLER hereby authorizes Broker to advertise the Property as a SHORT SALE and/or PRE-FORECLOSURE property as part of any signage advertising the Property.

6. BROKER has advised SELLER to obtain legal counsel to oversee and supervise the **SHORT SALE** and/or PRE-FORECLOSURE transaction, and facilitate negotiations with encumbrance holders, and has further advised SELLER to consult with professional tax and financial advisors regarding the tax and other financial implications of entering into the **SHORT SALE** and/or PRE-FORECLOSURE transaction including, without limitation, that the amount of any indebtedness forgiven by Lender may be taxable. SELLER acknowledges that SELLER has considered alternatives to a short sale such as mortgage modification, refinance, deed in lieu of foreclosure and bankruptcy.

7. SELLER shall promptly furnish the following information and documentation to encumbrance holders and court, if applicable, as and when requested: (a) copies of the fully executed purchase and sale agreement; (b) a preliminary Closing Disclosure or a closing statement prepared by the responsible party; ~~(c) SELLER's employment information, pay stubs, tax returns, bank and financial statements, copies of medical bills, hardship letter outlining SELLER's financial difficulties and citing any specific unforeseen or special circumstances to justify the SHORT SALE transaction, proof of SELLER's existing assets and liabilities, homeowner and condominium association estoppel/status letters, and any and all other information and documentation required to evidence and substantiate SELLER's financial inability to fulfill SELLER's repayment obligations.~~

~~8. SELLER shall within 5 days from the effective date of any purchase and sale agreement initiate the process to have the short sale approved by all encumbrance holders and request in writing a delay of the foreclosure sale date if the foreclosure sale date is before the closing date. SELLER agrees to provide all information and documentation required by encumbrance holders within 5 days after encumbrance holders request same.~~

9. Unless otherwise directed in writing by SELLER's encumbrance holder(s), SELLER understands that SELLER has an obligation to inform the encumbrance holder(s) in writing of all subsequent higher written offers, whether accepted or not, until SELLER has received written approval by the encumbrance holder(s) of the short sale.

10. SELLER understands that failure to inform SELLER's encumbrance holder(s) in writing of all subsequent higher written offers prior to receipt of written approval by the encumbrance holder(s) of the short sale may be construed as mortgage fraud.

11. SELLER may cancel this Listing Agreement prior to the ending date of the listing period, without advance notice to the BROKER, and without payment of a commission or any other consideration, **if the Property is conveyed to the mortgage insurer or the mortgage holder.**

SELLER UNDERSTANDS THAT ALL OR SOME OF THE ABOVE MAY HAVE BEEN CONSIDERED CONFIDENTIAL INFORMATION, AND SELLER HEREBY WAIVES THE RIGHT OF CONFIDENTIALITY FOR THESE MATTERS.

_[signature]_   Christine L Heverdeen   11/24/19
SELLER Printed Name   SELLER Signature   Date

as Trustee and only as Trustee in Banker. Est. of Alvaro & Lawrie Ramos, Case No. 8:19-09605-MGW

_____   _____   _____
SELLER Printed Name   SELLER Signature   Date

_____   _____   _____
SELLER Printed Name   SELLER Signature   Date

_____   _____   _____
SELLER Printed Name   SELLER Signature   Date

**Preferred Contact Information:**

_____
Mailing Address

_____
Email Address

_____
Phone Number(s)

7 STAR REALTY   904-425-8280
BROKER Firm Name   Listing Office Phone #

P.O. BOX 350822 JACKSONVILLE, FL 32235
Listing Office Address

_____   _____
Signature of Listing Licensee   Date

NAJI HASSAN   904-425-8280
Printed Name of Listing Licensee   Listing Licensee Phone #

4258280S@GMAIL.COM
Listing Licensee Email Address